**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **VIVEK & JAY, LLC, etc.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION 22-0443-WS-MU** |
| | ) |
| **INDEPENDENT SPECIALTY** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

**ORDER**

This matter is before the Court on the defendant's motion to compel arbitration and to stay litigation or, alternatively, to dismiss the proceedings. (Doc. 14). The parties have filed briefs in support of their respective positions, (Docs. 22, 24, 26, 28), and the motion is ripe for resolution.

According to the complaint, (Doc. 1-2 at 7-11), the defendant issued a policy ("the Policy") insuring the plaintiff's property, which was damaged by Hurricane Sally. The defendant has without lawful excuse failed to pay sums due under the policy. The complaint asserts claims for breach of contract and for bad faith.

The Policy provides in pertinent part as follows:

> All matters in dispute between you and us … in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.
> …
> The award of the Arbitration Tribunal shall be in writing and binding. If either of the parties should fail to carry out any award the other party may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

(Doc. 14-1 at 35). The plaintiff does not deny that, if this were the only provision to be considered, the defendant's motion would be due to be granted. Instead, the plaintiff

argues that the arbitration provision has been "superseded" by an endorsement which renders the arbitration provision "null and void."  In the alternative, the plaintiff argues that the two provisions expose an ambiguity as to whether the Policy contains an arbitration provision, which ambiguity, under Alabama law governing the construction of insurance contracts, must be resolved against the defendant, with the same result that the Policy contains no arbitration provision.  (Doc. 22 at 3-7).

The endorsement reads in pertinent part as follows:

> POLICYHOLDER NOTICE
> SERVICE OF SUIT
> THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY
> To the extent a provision of this policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  ….
> In the event of failure to pay any amount claimed to be due under the terms of this policy and at your request, we agree to submit to the jurisdiction of a court of competent jurisdiction within the United States of America (the "United States").  It is further agreed that … in any suit instituted against us with respect to this policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

(Doc. 14-1 at 69).  The endorsement further addresses service of process and the defendant's retention of rights to file its own action, remove an action, or seek transfer of a case to another court.  (*Id.*).

"[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists."  *Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1368 (11th Cir. 2005); *accord Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1329-30 (11th Cir. 2016).  "Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions."  *Jay v. United Services Automobile Association*, 343 So. 3d 18, 21 (Ala. 2021) (internal quotes omitted).  The plaintiff concurs with these propositions.  (Doc. 22 at 6).

In the process of policy interpretation, the rule of *contra proferentem* is employed only if ambiguity remains after resort to other rules of construction. "[T]he rule that ambiguous insurance contracts are to be construed in favor of insureds … may not be permitted to frustrate the parties' expressed intention if such intention can be otherwise ascertained." *Baldwin Mutual Insurance Co. v. Adair*, 181 So. 3d 1033, 1042 (Ala. 2014) (internal quotes omitted); *accord Molton, Allen and Williams, Inc. v. St. Paul Fire & Marine Insurance Co*., 347 So. 2d 95, 99 (Ala. 1977). If a court determines that terms are ambiguous, "then the court must use established rules of contract construction to resolve the ambiguity," and "[c]ontract terms will not be construed against the party who framed them if other rules of construction would be thwarted in their legitimate operation by the application of that rule of construction," because "the rule of *contra proferentem* is generally a rule of last resort that should be applied only when other rules of construction have been exhausted." *FabArc Steel Supply, Inc. v. Composite Construction Systems, Inc.*, 914 So. 2d 344, 357-58 (Ala. 2005). The defendant relies on this principle, (Doc. 26 at 3-4), and the plaintiff has accepted it by failing to challenge it.

By the express and unambiguous terms of the endorsement, the arbitration provision remains in full force and effect unless it is "inconsistent" with the endorsement. The plaintiff argues the two are necessarily inconsistent because the arbitration provision contemplates that "[a]ll matters in dispute" will be resolved by arbitration, while the endorsement contemplates that at least some of those matters in dispute (those concerning a failure to pay amounts claimed to be due) may be resolved by litigation.

The plaintiff's argument must fail because the Alabama Supreme Court has already held that such provisions are not inconsistent. In *Advance Tank and Construction Co. v. Gulf Coast Asphalt Co*., 968 So. 2d 520 (Ala. 2006), the parties' contract provided that "[a]ll disputes between the parties, which cannot be amicably settled, shall be settled by binding arbitration …." *Id*. at 524. Elsewhere, the contract provided that the defendant "expressly agrees that the venue for any litigation hereunder or related hereto shall be in Mobile County, Alabama, and hereby consents to the jurisdiction of the courts located therein over its/their person in any action to enforce any provisions hereof." *Id*.

3

at 526.  The contract further provided that, "if there is any conflict between this and any other document forming a part of this contract, this document shall control."  *Id*.  Because the arbitration provision was found in an attachment to the contract,[1] this meant that the arbitration provision would give way if in conflict with the other provision.

One established rule of contract construction is that "[i]nconsistent parts in a contract are to be reconciled, if susceptible of reconciliation …."  *Sullivan, Long & Hagerty v. Southern Electric Generating Co*., 667 So. 2d 722, 725 (Ala. 1995).  The *Advance Tank* Court invoked this rule in holding that "the forum-selection clause in this case does not conflict with the arbitration provision."  968 So. 2d at 527.  Because the former provision neither "expressly forb[ade] arbitration as an alternative form of dispute resolution" nor "express[ed] preference for the [litigation] method of dispute resolution," the Court concluded that "the two clauses can be read consistently to express a preference for the venue of litigation of any disputes that are to be resolved outside arbitration."  *Id*.[2]  Because the two provisions could reasonably be read as having different fields of operation, the *Sullivan* rule required adoption of that construction, eliminating any arguable inconsistency.  *Id*.

The defendant relies on *Advance Tank*, (Doc. 26 at 6), yet the plaintiff ignores it.  Without explanation, the plaintiff asserts that the defendant has offered no case law on point and no reasonable construction under which the arbitration provision (at least with respect to disputes over sums due) could survive.  (Doc. 28 at 1).  *Advance Tank*, however, is quite clearly on point, and it adopts a construction of the two provisions that leaves the arbitration provision intact.  Given the close parallels between the contractual language at issue in *Advance Tank* and that employed in the Policy, the onus rests on the

---

[1] The arbitration provision was contained in the "terms and conditions," which was part of the "proposal," which was part of the contract.  968 So. 2d at 523-24.

[2] Such situations would include actions to compel arbitration, to challenge the validity or application of the arbitration provision, or to enforce an arbitration award.  968 So. 2d at 527.  They might also include, for example, suits brought pursuant to mutual consent to forego the arbitration avenue.  *Id*. at 529 (Harwood, J., concurring specially).  The precise range of potential actions is unimportant for present purposes; all that matters is that such a range exists.

plaintiff to identify some meaningful difference that could serve to distinguish *Advance Tank*, and the plaintiff by its silence has failed to do so.[3]

As noted, the plaintiff argues that, even if the arbitration provision is not inconsistent with the endorsement, such inconsistency is one reasonable reading of the provisions' interplay and thus, under the rule of *contra proferentem*, the reading the Court must accept.  The existence of two reasonable constructions of the provisions' interplay (assuming without deciding that the plaintiff's interpretation is reasonable) would establish an ambiguity[4] but, as noted, it is not the existence of initial ambiguity that triggers application of the rule of *contra proferentem* but only the continued existence of ambiguity even after resort to applicable rules for resolving the ambiguity. Under *Sullivan*, a court is required to resolve any perceived inconsistency between provisions by reconciling them if possible and, under *Advance Tank*, the provisions at issue here are to be reconciled by adopting the interpretation that gives them different fields of operation.  Application of this rule of construction thus eliminates any ambiguity that might otherwise exist.  In short, the plaintiff ends up in the same place whether speaking in terms of inconsistency or of ambiguity.

The plaintiff points out that "[t]he language in an insurance policy should be given the same meaning that a person of ordinary intelligence would reasonably give it." *Western World Insurance Co. v. City of Tuscumbia*, 612 So. 2d 1159, 1161 (Ala. 1992). Such a person, the plaintiff insists, would understand that the endorsement eliminates any arbitration provision.  (Doc. 28 at 5-6).  To the uncertain extent it intends to offer this principle as a rule of construction for the resolution of ambiguity, to be applied prior to

---

[3] The closest the plaintiff comes is by hinting that the language, "This Endorsement Changes the Policy," announces that the endorsement changes the arbitration provision.  (Doc. 28 at 4).  In a word, no.  The insertion of the endorsement of itself changes the Policy, because it adds to the Policy by addressing service of process and other matters.  A statement that the endorsement "changes the Policy" says nothing at all regarding whether it changes a particular provision of the Policy.

[4] *See Adair*, 181 So. 2d at 1043 (language is ambiguous when it is susceptible to two or more reasonable interpretations).

the rule of harmonizing apparently inconsistent provisions, the plaintiff is mistaken.  A court gives language in a policy the same meaning as would a person of ordinary intelligence only "[w]here the parties disagree on whether the language in an insurance contract is ambiguous."  *Jay v. United Services Automobile Association*, 343 So. 3d 18, 21 (Ala. 2021) (internal quotes omitted); *accord Mid-Century Insurance Co. v. Watts*, 323 So. 3d 39, 50 (Ala. 2020).  That is, the rule for which the plaintiff contends is a rule employed in determining whether an ambiguity exists; it is not a rule for resolving the ambiguity.

For the reasons set forth above, the defendant's motion to compel arbitration is **granted**.[5]  This action is **stayed** pending resolution of the arbitration proceedings.[6]  The defendant is **ordered** to file and serve, on or before **June 10, 2023**, and on or before the tenth day of every second month thereafter, a report detailing the status of the arbitration proceedings.  The defendant is further **ordered** to file and serve, within 14 days of the conclusion of arbitration proceedings, notice of same.

DONE and ORDERED this 11th day of April, 2023.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5] Because the rule of *contra proferentem* does not come into play, the Court need not address the defendant's arguments:  (1) that the rule applies only to questions of coverage and payment (including exclusions and conditions), not to ancillary matters such as dispute resolution; and (2) that the rule as the plaintiff would apply it here is preempted by the Federal Arbitration Act ("FAA") as hostile to arbitration.

[6] Although it has moved for dismissal as an alternative to a stay, the defendant expresses no preference for the former course and identifies no basis for pursuing it.  The FAA provides that the Court shall "stay the trial of the action of the action until such arbitration has been had …" 9 U.S.C. § 3, and the Eleventh Circuit has suggested it may be error to dismiss rather than stay.  *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.3d 698, 699 (11th Cir. 1992).  The Court therefore follows its usual practice of staying proceedings rather than dismissing the action.  *E.g., Beltsville Land, LLC v. Conaboy*, 2018 WL 792057 at 8 n.11 (S.D. Ala. 2018).  The defendant's alternative motion to dismiss is **denied**.